Prob 12C
TNMP (11/2018)

# UNITED STATES DISTRICT COURT
## for
## Middle District of Tennessee

## Petition for Warrant for Offender on Supervision

Name: <u>Jesse Applegate</u>                                    Docket Number: <u>3:19CR00274-001</u>

Name of Current Judicial Officer:  <u>The Honorable William L. Campbell, Jr., Chief U.S. District Judge</u>

Date of Original Sentence: <u>June 19, 2020</u>

Original Offense: <u>21 U.S.C. § 841(a)(1) Possession with Intent to Distribute Methylenedioxymethamphetamine (MDMA), Crack Cocaine, Methamphetamine, Buprenorphine, and Diazepam; 18 U.S.C. § 922(g)(1) Convicted Felon Possession of a Firearm</u>

Original Sentence: <u>72 months' custody followed by three years' supervised release</u>

Date of Revocation Sentence: <u>October 17, 2025</u>

Revocation Sentence: <u>Time served followed by 30 months' supervised release</u>

Type of Supervision: <u>Supervised Release</u>            Date Supervision Commenced: <u>April 2, 2025</u>

Assistant U.S. Attorney: <u>Joshua A. Kurtzman</u>        Defense Attorney: <u>Sunny Koshi</u>

---

### PETITIONING THE COURT

☐ To Issue a Summons
☒ To Issue a Sealed Warrant
☐ To Consider Additional Violations\Information

---

The Court Orders:
☐   No Further Action at this Time
☐   The Issuance of a Summons
☒   The Issuance of a Warrant
    ☐   Sealed Pending Warrant Execution (cc: U.S. Probation and U.S. Marshal only)
☐   The Consideration of Additional Violations and/or Information
☐   Other

Considered, this <u>12th</u> day of <u>November</u>, 2025, and made part of the record in the above case.

_____
The Honorable William L. Campbell, Jr.
Chief United States District Judge

I declare under penalty of perjury that the foregoing is true and correct.
Respectfully submitted this 31st day of October, 2025.

_____
James Foster
Senior U.S. Probation Officer

Place: Nashville, TN

## ALLEGED VIOLATIONS

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall reside at Diersen Charities Residential Reentry Center (RRC) for a period of up to eight months. The defendant may be discharged from the RRC at an earlier date if an acceptable residence is proposed and approved by the probation officer in advance. While residing at the RRC, the defendant shall comply with all rules and regulations, with the following modification. The Court specifically orders the waiver of any requirement that the defendant pay subsistence while residing at the RRC. Instead, the Court orders that the defendant deposit into a personal savings account whatever percentage of his income would otherwise have been required toward subsistence.** |

Mr. Applegate, who was ordered by the Court to reside at Diersen Charities Residential Reentry Center (RRC) for up to eight months began residing there on October 23, 2025. Mr. Applegate allegedly committed three violations of the facility's rules and regulations and was discharged on the early afternoon of October 30, 2025. The following information was received from RRC staff.

On October 27, 2025, RRC staff reportedly found Mr. Applegate in a dormitory bathroom, on his hands and knees in a puddle of water. Mr. Applegate was reportedly shaking uncontrollably, was sweating profusely, spoke incoherently, and appeared disoriented. At the request of RRC staff, Mr. Applegate attempted to stand but fell whilst attempting to do so. After approximately 20 minutes, Mr. Applegate was able to stand and walk upstairs to his assigned dormitory. Mr. Applegate's presentation during this event led RRC staff to believe he was under the influence of an unspecified illicit substance. Consequently, on October 28, 2025, RRC staff imposed a Termination Contract whereby Mr. Applegate would be discharged from the facility if he committed any further infractions within the next 30 days.

On the morning of October 29, 2025, the probation officer met with Mr. Applegate and questioned him regarding the events of October 27, 2025. Mr. Applegate initially responded that he didn't know what had taken place. When questioned further, Mr. Applegate claimed RRC staff had accused him of having "done something." The probation officer advised Mr. Applegate of the RRC's account of those events and staff members' suspicions that he had used an illicit substance., Mr. Applegate denied those events took place, denied having used any illicit substances, and stated his belief that RRC staff had concocted the story because they wished to discharge him from the facility. The probation officer encouraged Mr. Applegate to be truthful and accurate in his answers, to reach out if he wished to add any details to his account, to refrain from any use of illicit substances, and to follow all RRC rules.

On the evening of October 29, 2025, after residents were required to remain in their assigned dormitories, RRC staff reportedly found Mr. Applegate in a different

dormitory. When asked why he was there, Mr. Applegate replied "I came over here to use the bathroom and get coffee." RRC staff reminded Mr. Applegate that he was not permitted to be in a different dormitory after-hours, and his having done so constituted a violation of RRC rules.

On the morning of October 30, 2025, RRC staff reportedly found Mr. Applegate standing by one of the dormitory windows with his pants sagging. RRC staff observed that Mr. Applegate was trembling and seemed disoriented, as he appeared startled when a staff member approached him to check on his well-being. Staff instructed Mr. Applegate to walk downstairs and sit in the RRC lobby, where he struggled to keep his pants up. Mr. Applegate's presentation during this event led RRC staff to believe he was under the influence of an unspecified illicit substance. Consequently, Mr. Applegate was discharged from the facility. Notably, RRC staff instructed Mr. Applegate to go directly to the Probation Office. As of the date of this petition, Mr. Applegate has not reported to the probation officer and all attempts to contact him have been unsuccessful.

2. **You must take all mental health medications that may be prescribed by your treating physician.**

    On October 23, 2025, Mr. Applegate was released from custody with approximately one month's supply of several prescribed psychiatric medications, each of which he was to take daily. The probation officer instructed him to continue taking the medications as prescribed. RRC records indicate Mr. Applegate failed to take his medications on multiple occasions, as detailed below.

    Mr. Applegate was prescribed the medication Divaprolex to treat symptoms of bipolar disorder. He failed to take that medication on October 25, 2025.

    Mr. Applegate was prescribed the medication Sertraline to treat symptoms of depression. He failed to take that medication on October 24, 25, 29, and 30, 2025.

    Mr. Applegate was prescribed Quetiapine, an antipsychotic medication. He failed to take that medication on October 23, 24, 25, 26, 29, and 30, 2025.

    When Mr. Applegate was discharged from the RRC on October 30, 2025, he left his prescribed medications there.

**Compliance with Supervision Conditions and Prior Interventions:**

Mr. Applegate's term of supervised released recommenced on October 23, 2025, and he is scheduled to complete his term on April 23, 2028. Mr. Applegate resided at Diersen Charities Residential Reentry Center, where he was scheduled to remain for up to eight months, but he was discharged from that facility for alleged noncompliance on October 30, 2025. His current whereabouts are unknown and all attempts to contact him have been unsuccessful.

**Update of Offender Characteristics:**

Mr. Applegate most recently appeared before Your Honor on October 17, 2025, whereupon he pled guilty to two supervised release violations, one of which was a new state-level criminal conviction for Simple Domestic Assault (a misdemeanor). The Court revoked Mr. Applegate's original supervised release and

sentenced him to time served to be followed by a new supervision term of 30 months. The Court ordered that Mr. Applegate remain in custody until October 23, 2025, upon which date he would be released to reside at Diersen RRC for up to eight months as a new supervised release condition.

**U.S. Probation Officer Recommendation:**

It is respectfully recommended that a sealed warrant be issued for Mr. Applegate so that he may appear before the Court to answer to the violation behavior outlined above.

# SENTENCING RECOMMENDATION
## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. JESSE APPLEGATE CASE NO. 3:19CR00274-001

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** VI

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003   PROTECT ACT PROVISIONS

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **Custody:** | **2 years** (Class C felony) *18 U.S.C. § 3583(e)(3)* | **8-14 months** *U.S.S.G. § 7B1.4(a)* | **12 months** |
| **Supervised Release:** | **3 years less any term of imprisonment** *18 U.S.C. § 3583(h)* | **1-3 years** *U.S.S.G § 5D1.2(a)(2)* | **1 year** |

**Statutory Provisions:**
Under 18 U.S.C. § 3583(e)(3) the Court may revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:**
U.S.S.G. § 7B1.1(a)(3) Grade C Violations - conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.3(a)(2) Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.


Approved:

*Charles Ingram* (signature)
Charles Ingram
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Jesse Applegate

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:19CR00274 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 04 / 02 / 2025
                            *month  day  year*

5. **Original District/Office** _____
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* _____

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Failure to follow RRC rules and regulations. | C |
   | Failure to take prescribed mental health medications. | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))* — C

9. **Criminal History Category** *(see §7B1.4(a))* — VI

10. **Range of Imprisonment** *(see §7B1.4(a))* — 8 - 14 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☒ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Jesse Applegate

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) _____         Community Confinement  112 days
    Fine($)  100 (Special Assessment)      Home Detention  _____
    Other    _____               Intermittent Confinement _____

13. **Supervised Release**
    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: _____ to _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002